UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, <br>     Plaintiff, | Case No. 1:12-mc-022 |
| v. | Dlott, J. <br> Litkovitz, M.J. |
| KEVIN TRUDEAU, *et al.*, <br>     Defendants, | ORDER |
| v. | |
| GLOBAL INFORMATION NETWORK, <br>     Movant. | |

      This case originated the United States District Court for the Northern District of Illinois. *See F.T.C. v. Trudeau*, No. 03-cv-3904 (N.D. Ill.). Plaintiff, the Federal Trade Commission (FTC), filed a civil contempt action against Kevin Trudeau (Trudeau), resulting in a $37.5 million sanction against Trudeau. As part of its investigation into Trudeau's assets and in an attempt to collect on the judgment against Trudeau, the FTC filed a subpoena to Fifth Third Bancorp (Fifth Third) seeking production of the bank records of movant Global Information Network (GIN).

      This matter is before the Court on GIN's motion to quash the FTC's subpoena to Fifth Third to produce GIN's financial documents (Doc. 1); the FTC's response in opposition (Doc. 3); GIN's reply memorandum (Doc. 4); the FTC's notice of supplemental authority (Doc. 8); and GIN's response. (Doc. 9). Pursuant to GIN's request, oral argument was held on June 4, 2012. (Doc. 11). Following the hearing, the Court held the record open until July 2, 2012 to allow the parties to submit additional authority and information in support of their respective arguments. (Docs. 11, 16). The FTC filed its supplemental brief on June 18, 2012 (Doc. 13); GIN filed its

supplemental brief on July 2, 2012. (Doc. 17). GIN submitted additional evidence on September 12, 2012, regarding a related arbitration ruling. (Doc. 18). The FTC objected to GIN's late supplementation as untimely. (Doc. 19). Nevertheless, the FTC further supplemented the record on November 14, 2012, after the deadline set by the Court. (Doc. 20).

At the outset, the Court determines that while GIN's September 2012 supplementation (Doc. 18) was beyond the date set by the June 20, 2012 Order (Doc. 16), the late supplementation will be considered in the interest of having a complete record and deciding this matter on the merits. For these reasons, the Court will likewise consider the FTC's November 2012 supplementation in making its ruling.

## I. Background

In September 2007, the FTC filed a civil contempt proceeding against Trudeau for violating a permanent injunction. *See F.T.C. v. Trudeau*, No. 03-cv-3904 (N.D. Ill.). Under the terms of the injunction, Trudeau is prohibited from "producing or disseminating infomercials . . . [,]" other than advertising or promoting his own books or publications, provided he "[does] not misrepresent the content of the book." *F.T.C. v. Trudeau*, 567 F. Supp.2d 1016, 1017-18 (N.D. Ill. 2007). Trudeau was subsequently found to be in violation of this order and held in contempt for materially misrepresenting the contents of a diet book he authored. *Id.* at 1023. Following briefing and oral argument, the district court ordered Trudeau to pay a fine in excess of $37 million to compensate consumers of the book. *F.T.C. v. Trudeau*, No. 03-cv-3904, 2008 WL 7874195, at *3 (N.D. Ill. Dec. 11, 2008). The ruling and sanction were eventually affirmed by the Seventh Circuit. *F.T.C. v. Trudeau*, 662 F.3d 947 (7th Cir. 2011), *cert denied*, 133 S.Ct. 426 (Oct. 9, 2012).

Following Trudeau's assertion that he was unable to pay the sanction, the FTC initiated post-judgment discovery in the form of a subpoena to Fifth Third. The subpoena commands Fifth Third to produce documents related to bank accounts "held by or titled in the name of: (1) Kevin M. Trudeau, and any account held for his benefit or for which he is a signatory or authorized user; (2) Global Information Network FDN . . .; and (3) Nataliya Babenko . . . and any account held for her benefit or for which she is a signatory or authorized user."[1] (Doc. 9, Ex. 2 at 10). In response to the subpoena, GIN filed the instant motion to quash. (Doc. 1).

## II. Standard of Review

Rule 45 of the Federal Rules of Civil Procedure governs motions to quash subpoenas. Fed. R. Civ. P. 45. Courts must quash subpoenas requiring "disclosure of privileged or other protected matter, if no exception or waiver applies . . . ." Fed. R. Civ. P. 45(c)(3)(A)(iii). "[T]he burden of persuasion in a motion to quash a subpoena . . . is borne by the movant." *U.S. v. Int'l Bus. Mach. Corp.*, 83 F.R.D. 97, 104 (S.D.N.Y. 1979). *See also In re Smirman*, 267 F.R.D. 221, 223 (E.D. Mich. 2010); *Recycled Paper Greetings, Inc. v. Davis*, No. 1:08-mc-13, 2008 WL 440458, at *3 (N.D. Ohio Feb.13, 2008). In reviewing a motion to quash, the court may consider "whether (i) the subpoena was issued primarily for the purposes of harassment, (ii) there are other viable means to obtain the same evidence, and (iii) to what extent the information sought is relevant, nonprivileged, and crucial to the moving party's case." *Bogosian v. Woloohojian Realty Corp.*, 323 F.3d 55, 66 (1st Cir. 2003) (citing cases). "If the documents sought by the subpoena are relevant and are sought for good cause, then the subpoena should be enforced unless the documents are privileged or the subpoenas are unreasonable, oppressive, annoying, or

---

[1] Neither GIN nor Nataliya Babenko is a party to *F.T.C. v. Trudeau*, No. 03-cv-3904 (N.D. Ill.). GIN is a multi-form foundation formed in the country of Nevis-St. Kitts; Ms. Babenko is Trudeau's spouse. Notably, in February 2012, Ms. Babenko filed a similar motion to quash which was denied by this Court. *See Babenko v. F.T.C.*, No. 1:12-mc-6 (S.D. Ohio Mar. 22, 2012) (Bowman, M.J.).

embarrassing." *Recycled Paper Greetings*, No. 1:08-mc-13, 2008 WL 440458, at *3 (internal quotations and citations omitted).

### III. Analysis

GIN seeks to quash the instant subpoena asserting that it exceeds the permissible scope of post-judgment discovery and, further, that the information sought is irrelevant as Trudeau "is not, and never has been, an owner, manager, officer or director of GIN." (Doc. 1 at 3). GIN asserts that, as a non-party, the Federal Rules of Civil Procedure do not permit discovery of its assets. *Id.* at 4. Further, GIN contends that the FTC has exceeded the sanctioned boundaries of post-judgment discovery by issuing the subpoena and is engaging in a fishing expedition aimed at gathering information to damage GIN. *Id.* GIN asks this Court to quash the subpoena; enjoin the FTC from issuing further post-judgment discovery requests without providing it notice; and compel the FTC to disclose all other post-judgment discovery requests issued in connection with the *Trudeau* litigation.

In response, the FTC argues that the subpoena should be enforced in light of evidence demonstrating that Trudeau and his wife, Ms. Babenko, have significant financial ties to GIN. In support, the FTC cites to evidence that: Ms. Babenko is a signatory on GIN's bank account with Fifth Third; Trudeau is a founding member of GIN and a member of its council; and that Trudeau exercises control over GIN to the extent that he has authority to waive membership and/or initiation fees. Given this evidence, the FTC contends that the information sought by the subpoena is relevant to its investigation into Trudeau's purported inability to pay his contempt sanction. Further, the FTC asserts that, as a non-party, GIN is not entitled to advance notice of its post-judgment discovery requests regarding Trudeau.

### A. <u>GIN is not entitled to prior notice of the FTC's discovery requests</u>.

GIN claims that the FTC's failure to serve it with notice of the subpoena deprived it of the right to object before Fifth Third produced the requested information. In support of this argument, GIN cites to Rule 45, which requires that a copy of the subpoena be delivered "to the named person . . . ." Fed. R. Civ. P. 45(b)(1). Further, GIN contends that because the FTC failed to serve it with a copy of the subpoena prior to its return date, the time requirements provided by Rule 45 for filing a motion to quash are inapplicable. GIN's arguments are not well-taken.

Rule 45 provides that "[s]erving a subpoena requires delivering a copy to the *named person*" and that prior notice must be given to *each party* where a subpoena commands the production of documents. Fed. R. Civ. P. 45(b)(1) (emphasis added). Here, GIN did not learn about the subpoena until after the requested documents had been produced by Fifth Third. However, the "named person" in the subpoena is Fifth Third and not GIN. In addition, by its own assertion, GIN is not a party to the underlying action. Thus, by the Rule's plain language, GIN was not entitled to notice of the subpoena. *See F.T.C. v. Trudeau*, 5:12MC35, 2012 WL 5463829, at *3 (N.D. Ohio Nov. 8, 2012) ("[N]othing in the rules required the FTC to serve movants with the subpoena or give them notice thereof. In any event, even if movants were entitled to notice or service, they have failed to demonstrate any legally cognizable basis upon which they could have challenged the subpoena . . . .").

Assuming, *arguendo*, that GIN was entitled to notice, GIN's assertion of untimely notice does not require the subpoena be quashed. "Rather, where a party has failed to comply with the notice requirements of Rule 45(b)(1), courts have declined to quash subpoenas or to exclude

materials where the aggrieved party was not prejudiced by the delay." *GMAC Mortg., LLC v. McKeever*, No. 08-459-JBC, 2010 WL 1141226, at *2 (E.D. Ky. Mar. 22, 2010).

GIN has failed to provide any evidence that it was prejudiced by the lack of notice from the FTC regarding the instant subpoena. GIN admits that it received actual notice of the subpoena from a second-hand source. *See* Doc. 1 at 5 (GIN learned about the subpoena "through second-hand information."). Further, GIN has had an opportunity to be heard on its objections to the subpoena as evidenced by the instant ruling. In light of these facts, the Court is unable to conclude that GIN was prejudiced by the lack of notice from the FTC and GIN's motion to quash the subpoena for lack of notice is denied.

### B. The subpoena should be enforced as it seeks documents relevant to the FTC's investigation into Trudeau's assets.

GIN contends the subpoena must be quashed as it exceeds the permissible scope of post-judgment discovery by seeking information relating to its financial affairs that is irrelevant to the litigation against Trudeau. GIN's argument is premised upon the assertion that Trudeau does not have sufficient ties with GIN to justify the discovery as "Trudeau is not, and never has been, an owner, manager, officer or director of GIN." (Doc. 1 at 3). For the following reasons, the undersigned finds that GIN's claims are insufficient to warrant quashing the subpoena.

"In aid of the judgment or execution, the judgment creditor . . . may obtain discovery *from any person* . . . as provided in these rules . . . ." Fed. R. Civ. P. 69(a)(2) (emphasis added). "In the absence of any contrary agreement between the parties, the scope of post-judgment discovery is broad . . . and includes the right to obtain discovery from non-parties." *GATX Corp. v. Appalachian Fuels, LLC*, No. 09-41, 2011 WL 4015573, at *2 (E.D. Ky. Sept. 9, 2011) (citing *U.S. v. Conces*, 507 F.3d 1028, 1040 (6th Cir. 2007)). Judgment creditors are entitled to "utilize the full panoply of federal measures provided for under federal and state law to obtain

information from parties and non-parties alike, including information about assets on which execution can issue or about assets that have been fraudulently transferred." *Magnaleasing, Inc. v. Staten Island Mall,* 76 F.R.D. 559, 561 (S.D.N.Y.1977). However, there are limits to post-judgment discovery regarding third parties and "[t]he party seeking such discovery must make 'a threshold showing of the necessity and relevance' of the information sought." *Michael W. Dickinson, Inc. v. Martin Collins Surfaces & Footings, LLC*, No. 5:11-CV-281, 2012 WL 5868903, at *2 (E.D. Ky. Nov. 20, 2012) (quoting *Trs. of N. Fla. Operating Eng'rs Health & Welfare Fund v. Lane Crane Serv., Inc.*, 148 F.R.D. 662, 664 (M.D. Fla. 1993)). Although discovery of non-party assets is ordinarily not contemplated by Rule 69(a), such discovery is permitted where "the relationship between the judgment debtor and the non-party is sufficient to raise a reasonable doubt about the bona fides of the transfer of assets between them." *Id.* (quoting *Magnaleasing, Inc.,* 76 F.R.D. at 562).

Here, the FTC contends that the subpoenaed documents relating to GIN's financial accounts are relevant to its investigation into Trudeau's finances because both Trudeau and his wife have strong ties, financial and otherwise, to GIN. The FTC has provided the following evidence to support its contention: (1) Trudeau is a founder of GIN (Doc. 3, Ex. 2, ¶5) (Declaration of FTC Investigator Ronald Lewis)[2]; (2) Trudeau has represented that he is a member of the GIN council in emails to prospective GIN members and in radio interviews (*Id.* at 8-9 (Trudeau's email No. 1); *Id.* at 21-22 (transcription of Trudeau's radio interview); (3) Trudeau exercises financial control over GIN by having authority to waive its initiation fees (*Id.* at 10-12) (Trudeau email No. 2); (4) Trudeau has knowledge of GIN's supposedly anonymous members (*Id.* at 13-14) (email from GIN discussing Trudeau's speaking appearance at a GIN

---

[2] Mr. Lewis is a Supervisory Investigator at the FTC working in the Enforcement Division of the FTC's Bureau of Consumer Protection in Washington D.C. *Id.*, ¶ 1. In conjunction with this work, Mr. Lewis is involved in the FTC's investigation of Trudeau and businesses with which he is associated, including GIN. *Id.*, ¶ 2.

event); and (5) Ms. Babenko is an authorized signatory on GIN's bank account (Doc. 3, Ex. 1) (documents from Fifth Third's submitted in response to the subpoena). Further, in its first record supplementation, the FTC submitted evidence of money transfers from GIN accounts to the accounts of other business entities controlled by Trudeau. (Doc. 13, Ex. 2) (financial records from Fifth Third demonstrate that checks in the amounts of $8,000, $103,000, and $150,000 were written from GIN's account and that on these same days deposits for identical amounts were made into accounts controlled by Trudeau).

GIN argues that the FTC's evidence fails to demonstrate Trudeau's financial ties with GIN are sufficient to justify the subpoena. In its July 2012 supplementation, GIN submitted the affidavit of Marc J. Lane, its attorney.[3] Pursuant to the Nevis Multiform Foundation Ordinance, a multiform foundation like GIN must have: (1) a registered agent; (2) a management board; and (3) a secretary. (Doc. 17, Ex. 1 at 7-99). Mr. Lane attests that Trudeau is not and never has been a registered agent of GIN, a member of its management board, or its secretary as demonstrated by the provided flowcharts. (Doc. 17, Ex. 1 at 2-4, ¶¶ 3, 8). Relying on this evidence, GIN argues that the FTC's evidence purporting to show that Trudeau has control over GIN is "baseless." The undersigned disagrees.

First, the Court notes that at oral argument, counsel for GIN was unable to define or identify the organizational structure of GIN, explain any of the mechanisms regarding its formation, or identify who owns and/or controls it. (Doc. 11 at 3). While GIN's supplementation provides the governing laws for forming a multiform foundation in Nevis, *see*

---

[3] Attached to Mr. Lane's affidavit are the following exhibits: documents outlining the laws of Nevis governing the formation of multiform foundations (Doc. 17, Ex. 1 at 7-99); June 2012 correspondence between the FTC and GIN's counsel regarding the FTC's refusal to participate in the Nevis arbitration (*Id.* at 101-107); the St. Christopher and Nevis Arbitration Act (*Id.* at 109-11); the United Kingdom Arbitration Act (*Id.* at 113-44); and several one-page flowcharts respectively titled "GIN Structure," "GIN Checks," "Babenko Transactions," and "GIN Transactions." (*Id.* at 138-44).

-8-

Doc. 17, Ex. 1 at 7-99, the Court is unable to conclude from the provided materials that Trudeau has no control over GIN's financial dealings. The flowcharts provided by GIN fail to provide any illumination as to who owns or controls GIN except to identify that Trudeau is not a registered agent, secretary, or board member of GIN. *See* Doc. 17, Ex. 1 at 138. None of the information provided by GIN addresses Trudeau's role in GIN or the role of GIN's "council," of which Trudeau is a self-described member. In the absence of any evidence or even explanation about the ownership, control or management of GIN, the FTC's evidence indicating that Trudeau is a "founder" and "council" member of GIN who exercises control over GIN remains unrebutted.

GIN also takes issue with the admissibility of the FTC's evidence regarding Trudeau's self-acclaimed status as a founding GIN member and financial records demonstrating asset transfers between GIN-controlled and Trudeau and/or Babenko-controlled bank accounts. (Doc. 17 at 6-7, 7-13). To the extent that GIN argues this evidence is unpersuasive because it is unauthenticated and inadmissible,[4] this argument misses the mark. The instant matter concerns the discoverability of the information sought by the subpoena. At this stage, it is not necessary that the evidence presented be admissible. *See* Fed. R. Civ. P. 26(b)(1) ("Relevant information need not be admissible . . . if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."). *See also F.T.C. v. Trudeau*, 2012 WL 5463829, at *5. The evidence

---

[4] In its July 2012 supplementation, GIN attacks the evidence submitted by the FTC obtained from Fifth Third pursuant to the subpoena on the basis that it is inadmissible under Fed. R. Evid. 901 based on lack of authentication. *See* Doc. 17 at 5-6. Federal Rule of Evidence 901(a) provides that "the requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." GIN has not set forth any reasons for questioning the authenticity of the bank records submitted by the FTC. The circumstances surrounding their production, *i.e.*, pursuant to a subpoena to Fifth Third, as well as their appearance and content, persuade the Court that the documents are what they purport to be. *See* Fed. R. Evid. 902(9) ("Commercial paper, signatures thereon, and documents relating thereto to the extent provided by general commercial law" are self-authenticating); Fed. R. Evid. 901(b)(4) (documents can be authenticated by their "appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with the circumstances"); *Alexander Dawson, Inc., v. NLRB*, 586 F.2d 1300, 1302 (9th Cir. 1978) (holding "the content of a document, when considered with the circumstances surrounding its discovery, is an adequate basis for [its authentication]").

submitted by the FTC is relevant to its investigation and is likely to lead to the discovery of admissible evidence. Consequently, GIN's evidentiary argument is not well-taken.

GIN also argues that the FTC's evidence of money transfers between GIN's bank account and other business accounts is merely evidence of monetary transactions made in the ordinary course of business. However, GIN has provided no evidence to support this claim or to contradict the FTC's supported inference that Trudeau has unreported GIN-related assets that it may rightfully discover. The FTC has provided evidence which raises a "reasonable doubt about the relationship between movant[] and Trudeau and his companies and the bona fides of the transfers between these entities." *F.T.C. v. Trudeau*, 2012 WL 5463829, at *5. Specifically, the evidence demonstrating same-day monetary transfers in identical amounts from GIN accounts to accounts controlled by Trudeau, his wife, and/or Trudeau-controlled business entities raises a reasonable doubt about the bona fides of Trudeau's unreported financial dealings with GIN. *Id.* *See also Magnaleasing, Inc.*, 76 F.R.D. at 562.[5] The FTC's evidence implies that GIN's business transactions with those entities are not "totally independent from Trudeau, but may have been created to evade the contempt sanction and conceal Trudeau's assets." *F.T.C. v. Trudeau*, 2012 WL 5463829, at *5. Therefore, GIN's bank records are relevant to determining whether Trudeau has used GIN to conceal his assets. *Id.*

GIN has also provided evidence of an arbitration ruling against Mr. Lewis in Nevis holding that Mr. Lewis violated the terms of GIN's membership agreement by failing to disclose that he was an FTC investigator in seeking to join GIN. (Docs. 9, 18). To the extent that GIN seeks to quash the instant subpoena or exclude documents obtained by Mr. Lewis on the basis of

---

[5] The minimalistic flowcharts provided by GIN fail to contradict the FTC's evidence; rather, they seem to serve no purpose aside from illustrating the evidence received by the FTC regarding these account transfers. *See* Doc. 17, Ex. 1 at 4-5, ¶¶ 8-11; Doc. 17, Ex. 1 at 138-44.

the Nevis arbitration ruling against him, GIN's request is denied. GIN has cited no authority to support a finding that an arbitration ruling from Nevis is binding on this Court. Likewise, GIN's argument that the investigatory materials obtained by Mr. Lewis should be excluded from the instant proceedings on a "fruit-of-the-poisonous-tree" rationale as they were obtained in violation of GIN's membership agreement is of no consequence. GIN has not provided any legal authority supporting the application of a criminal evidentiary doctrine in a civil proceeding such as this. Moreover, the Supreme Court has "repeatedly declined to extend the exclusionary rule to proceedings other than criminal trials." *Penn. Bd. of Probation and Parole v. Scott*, 524 U.S. 357, 363-64 (1998). Consequently, the undersigned is not persuaded that the materials submitted by GIN require the Court to quash the subpoena.

In consideration of the briefings and arguments of the parties and upon review of the complete record, the Court finds that the FTC has demonstrated that there is "reasonable doubt about the bona fides" of Trudeau's relationship with GIN. *Magnaleasing, Inc.*, 76 F.R.D. at 562. The FTC has provided sufficient evidence establishing that GIN's bank account records are relevant to its investigation into Trudeau's undisclosed assets and are sought for good cause. *See Recycled Paper Greetings*, No. 1:08-mc-13, 2008 WL 440458, at *3. Accordingly, GIN's motion to quash is denied.

### IV. Conclusion

For the above reasons, GIN's motion to quash the subpoena (Doc. 1) is **DENIED**. Further, GIN's request for an order enjoining the FTC from issuing further post-judgment discovery requests without providing GIN notice and compelling the FTC to provide them with

-12-

any and all related post-judgment discovery requests in connection with the *Trudeau* litigation is **DENIED**.

**IT IS SO ORDERED.**

Date: 12/7/12

Karen L. Litkovitz
United States Magistrate Judge